## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of defendants Amy J. Luria ("Amy Luria") and Amy Luria Partners LLC ("AL Partners," and together with Amy Luria, "Defendants") in opposition to the motion of plaintiff Irving H. Picard, Esq., Trustee ("Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") for an order, pursuant to Rule 12 of the Federal Rules of Procedure, made applicable to this proceeding by Federal Bankruptcy Rule 7012, to dismiss the counterclaims of Defendants, and to strike the Fourteenth and Fifteenth Affirmative Defenses [Docket # 10] (the "Motion").

For the reasons set forth in detail below, the Motion should be denied in its entirety. The Trustee, who argues that the Defendants' "should not be permitted to jump the line," should not be permitted to jump ahead in this litigation and seek dismissal of certain claims and defenses that have yet to be litigated by the parties. The Trustee cannot bulldoze his way through this litigation. When viewing the allegations contained in Defendants' Answer [Docket # 7] in a light most favorable to the Defendants and accepting all allegations contained therein as true, Defendants have properly pleaded and stated cognizable counterclaims in this action arising out of the same transaction or occurrence that is the subject matter of the Trustee's claims. Therefore, the counterclaims survive a Rule 12 challenge. Additionally, it is premature to strike certain of Defendants' affirmative defenses of setoff without any discovery or a hearing on the relevant issues at this stage in the litigation. The Trustee's Motion is, therefore, premature.

There should be no bifurcation of the Trustee's claims and the Defendants' claims. The result the Trustee seeks is wholly improper. In fact, it appears the Motion is nothing more than an attempt to impermissibly strip the Defendants of their defenses and their meritorious counterclaims before the parties have even begun the discovery phase of the litigation. The

Motion offers no proof that the Defendants do not have meritorious claims and defenses. The Trustee asks this Court to accept all of *his* allegations as true, while also asking this Court to disregard all of *Defendants'* allegations and assertions. This position is wholly improper with respect to a Rule 12 motion. The counterclaims and the Fourteenth and Fifteenth Affirmative Defenses are properly pleaded in the Answer. The Trustee's Motion should, therefore, be denied on all grounds and the parties should proceed with discovery on all claims and defenses.

The Court is respectfully referred to the accompanying declaration of Steven R. Schlesinger, Esq., dated January 11, 2011 (the "Schlesinger Declaration") and the exhibits annexed thereto.

## PROCEDURAL HISTORY

The Trustee commenced the instant adversary proceeding on or about April 20, 2010. See Complaint, dated April 20, 2010 [Docket # 1] (the "Complaint"). In the Complaint, the Trustee asserts nine (9) counts, including a count objecting to the SIPA Customer Claim filed on behalf of Defendant AL Partners (Count Eight) and a count objecting to the General Unsecured Claim of Defendant Amy Luria (Count Nine). See Complaint.

Defendants filed an Answer, dated August 27, 2010 [Docket # 7] (the "Answer"), which includes seventeen (17) affirmative defenses and two (2) counterclaims seeking allowance of the SIPA Customer Claim (First Counterclaim) and the General Unsecured Claim of defendant Amy Luria (Second Counterclaim). See Answer.

The Trustee now purportedly seeks an order by this Court dismissing the Defendants' First and Second Counterclaims (the "Counterclaims") and their Fourteenth and Fifteenth Affirmative defenses for set-off (the "Setoff Defenses") pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

## FACTUAL BACKGROUND

AL Partners is a "customer" of BLMIS under the meaning of the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"). BLMIS Account Number 1-L0323 was opened in the name of AL Partners in or about 2008 by Bernard L. Madoff ("Madoff") and Peter Madoff (together with Madoff, the "Madoffs") as trustees of the Trust Under Article IX of the Will of Gladys C. Luria f/b/o Amy Luria (the "Amy Luria Trust"). Amy Luria is the sole beneficiary of the Amy Luria Trust.

Under the Last Will and Testament of Gladys C. Luria, dated April 4, 2005 (the "G. Luria Will"), Madoff and Peter Madoff were both executors of the estate of Gladys C. Luria (the "G. Luria Estate") and trustees of the Amy Luria Trust created under the G. Luria Will. In their capacities as trustees, the Madoffs formed AL Partners and opened an account in its name with BLMIS (Account # 1-L0323). Madoff was therefore a fiduciary of defendant Amy Luria as both executor of the G. Luria Estate and trustee of the Amy Luria Trust.

The Amy Luria Trust was funded by $1,487,500.00 transferred by Madoff from BLMIS Account # 1-L0121. This account was opened by the Madoffs as executors of the G. Luria Estate under the G. Luria Will (the "G. Luria Estate Account").

As executor of the G. Luria Estate, Madoff was required by law to provide an accounting of the G. Luria Estate and to pay proper estate taxes to the United States and to the State of New York based upon the true value of the assets of the G. Luria Estate. In order to determine how much estate tax was due and owing, Madoff had to value G. Luria's BLMIS Account (# 1-L0057) as if securities had been purchased for the account and as if the stated value of the account was true and correct, or risk betraying his fraud in 2006 at the time the estate taxes were due. Madoff paid $17,825,000.00 in estate taxes in 2006 and withdrew those funds from the G.

Luria Estate Account. See Exhibit C to the Complaint. This $17,825,000.00 that was paid in estate taxes was paid *solely* for the benefit of Madoff to disguise his fraud and not for the benefit of the G. Luria Estate or its beneficiaries.

Furthermore, as executor, Madoff allegedly made deposits from non-Madoff accounts of G. Luria and from the sale of non-Madoff assets of G. Luria totaling approximately $6,000,000.00 into the G. Luria Estate Account (#1-L0121). See Exhibit C to the Complaint. Madoff utilized this account as a pass-through account for the G. Luria Estate and subsequently made distributions as executor to G. Luria's beneficiaries, including defendant Amy Luria. See id. These deposits from non-Madoff accounts of G. Luria were used to fund the Amy Luria Trust. See id. The transfers at issue in the Complaint received by Amy Luria through the Amy Luria Trust are not fictitious profits or other customer's money as the money merely passed through the fiduciary estate account at BLMIS from legitimate non-Madoff sources.

### A.     The Customer Claim of Defendant AL Partners

Prior to the July 2, 2009 bar date, AL Partners mailed certified mail – return receipt a Customer Claim form (the "Customer Claim") with respect to BLMIS Account Number 1-L0323. The Customer Claim reflects a balance due to AL Partners in the amount of $1,485,500.00. A copy of the Customer Claim is annexed to the Schlesinger Declaration as Exhibit "A".

Following the filing of the Answer in this adversary proceeding, the Trustee issued the Notice of Trustee's Determination of Claim, dated September 14, 2010 (the "Determination of Claim"), denying AL Partners' Customer Claim in its entirety. Specifically, the Trustee denied AL Partners' claim for a credit balance of $1,485,500.00 on the ground that "[n]o securities were ever purchased for [its] account." The Trustee also stated that based upon his analysis, the

4

amount of money withdrawn from the account was greater than the amount deposited with BLMIS.

In accordance with the Claims Procedure Order entered by this Court on December 23, 2008, AL Partners filed an objection to the Determination of Claim (the "Objection to Determination of Claim"). See Docket # 3030, *SIPC v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-1789 (the "BLMIS Liquidation Proceeding"). A copy of the Objection to Determination of Claim is annexed to the Schlesinger Declaration as Exhibit "B"

**B.** **The General Unsecured Claim of Defendant Amy Luria**

Following the commencement of the BLMIS Liquidation Proceeding, an involuntary Chapter 7 bankruptcy case was commenced against Madoff. See In re Bernard L. Madoff, Case No. 09-11893 (the "Madoff Chapter 7 Case"). That involuntary bankruptcy case was substantively consolidated with the BLMIS Liquidation Proceeding. See Order, Docket # 252, Adv. Pro. No. 08-1789 (the "Consolidation Order"). Therefore, and as set forth in the Consolidation Order, all of the liabilities of Madoff personally are now consolidated with the BLMIS estate in the BLMIS Liquidation Proceeding.

Madoff was a fiduciary of defendant Amy Luria as both the executor of the G. Luria Estate and as a trustee of the Amy Luria Trust. Amy Luria has a breach of fiduciary duty claim against Madoff personally as Trustee of the Amy Luria Trust for, *inter alia*, failing to act reasonably and in good faith in administering the Amy Luria Trust and against Madoff as executor of the G. Luria Estate for engaging in self-dealing and disregarding his duty of undivided loyalty; failing to exercise reasonable care, diligence and prudence in administering both the G. Luria Estate and the Amy Luria Trust; and failing in his duty to invest and manage both the G. Luria Estate and the Amy Luria Trust in accordance with the Prudent Investor

5

Standard as codified in Section 11-2.3 of the New York Estates Powers and Trusts Law. This includes the defalcation by Madoff of $17,825,000.00 for the payment of estate taxes to hide his continuing fraud.

Prior to the commencement of this adversary proceeding, on or about April 13, 2010, Amy Luria filed a claim (Claim Number 39) against Madoff personally in the amount of $1,485,500.00 for these breaches of his fiduciary duties to Amy Luria (the "General Unsecured Claim"). A copy of the General Unsecured Claim is annexed to the Schlesinger Declaration as Exhibit "C".

### C. The Counterclaims

The Trustee's eighth count in the Complaint seeks an order disallowing AL Partner's Customer Claim. See Complaint at ¶¶ 117-120.

In response to this claim for relief, Defendants asserted the First Counterclaim seeking an order, *inter alia*, overturning any decision of the Trustee disallowing the Customer Claim and allowing the Customer Claim in its entirety in the amount of $1,485,500.00 plus interest. See Answer at ¶¶ 155-158. The First Counterclaim therefore arises out of the same transaction or occurrence as the Trustee's eighth count in the Complaint.

The Trustee's ninth count in the Complaint seeks an order disallowing Amy Luria's General Unsecured Claim. See Complaint at ¶¶ 121-124.

In response to this claim for relief, Defendants asserted the Second Counterclaim seeking an order, *inter alia*, allowing Amy Luria's General Unsecured Claim in its entirety in the amount of $1,485,500.00 as filed. See Answer at ¶¶ 159-162. The Second Counterclaim therefore arises out of the same transaction or occurrence as the Trustee's ninth count in the Complaint.

**D.   The Setoff Defenses**

   Defendants assert in the Answer two affirmative defenses for a setoff. See Answer at ¶¶ 140-142. These affirmative defenses are based upon and related to Amy Luria's General Unsecured Claim and Madoff's breach of his fiduciary duties to Amy Luria as beneficiary of the Amy Luria Trust and the G. Luria Estate for which Madoff was trustee and executor respectively. See id.

## ARGUMENT

### POINT I

### DEFENDANTS' COUNTERCLAIMS WITHSTAND A MOTION TO DISMISS

   The Defendants have properly pleaded and stated their Counterclaims in the Answer. The Trustee incorrectly and mistakenly argues that the Counterclaims should be dismissed because Defendants are purportedly "seek to circumvent the claims adjudication process and the Claims Procedure Order". See Motion at 6.

   A motion to dismiss counterclaims is governed by the same standard for determining a motion under Rule 12(b)(6) of the Fed. R. Civ. P. for failure to state a claim upon which relief may be granted. See Wells Fargo Bank Northwest N.A. v. TACA Int'l Airlines, S.A., 247 F. Supp. 2d 352, 363 (S.D.N.Y. 2002). It is well-settled that in deciding a motion to dismiss, a court must accept all factual allegations as true, draw all reasonable inferences in favor of the counterclaimant, and then evaluate those allegations to determine if they "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, __ U.S. ____, 128 S. Ct. 1937, 1950 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 470 (2d Cir. 1995). A motion to dismiss should therefore be granted only if no set

7

of facts can be established to entitle the counterclaimant to relief. See Walker v. City of New York, 974 F.2d 293, 298 (2d Cir. 1992). A court should therefore assume the truth of a pleading's factual allegations and test only its legal sufficiency. See e.g., McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000).

In the Answer, Defendants have properly pleaded the Counterclaims seeking allowance of both the Customer Claim and the General Unsecured Claim in response to the Trustee's request for an order disallowing both the Customer Claim and the General Unsecured Claim in the Complaint. See Complaint at ¶¶ 117-124. The Counterclaims, which seek *allowance* of those same claims, naturally arise out of the same transaction and occurrence as the Trustee's claim and therefore are properly pleaded counterclaims in the Answer.[1]

### A. The Counterclaims Are Properly Pleaded Compulsory Counterclaims in this Adversary Proceeding

Rule 13 of the Fed. R. Civ. P., made applicable in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7013, provides in part:

> (a) Compulsory Counterclaim.
> (1) In General. A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim:
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

See Fed. R. Civ. P. 13(a). A counterclaim is compulsory "if 'a logical relationship exists between the

---

[1] It is surprising that the Trustee argues to this Court that the Counterclaims should not be resolved in this adversary proceeding and indeed should be resolved separately. The Trustee was adamant about transferring the Defendants' lawsuit against a third party asserting pure state law claims for funds withdrawn from BLMIS prior to the commencement date to this Court. See Luria et al. v. HSBC Bank, N.A., 10-CV-537 (E.D.N.Y.). The Trustee vehemently argued that all claims relating to Madoff and BLMIS should be adjudicated in the same forum and joined in HSBC's application to have the matter transferred to the Southern District yet now appears to argue that some claims (indeed only the Defendants' claims) must be litigated outside of this adversary proceeding. See Docket # 14, Exhibit A, *Declaration Of Andrew Reich With Regard To Motion To Remand*, dated March 26, 201 0, with accompanying exhibits, 10-CV-537 (E.D.N.Y.).

8

claim and the counterclaim and [if] the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" In re Parmalat Sec. Litigation, 472 F. Supp. 2d 582, 584 (S.D.N.Y. 2007) (citations omitted). The purpose of the compulsory counterclaim rule is "to permit a court to decide all related claims in one action, thereby avoiding 'a wasteful multiplicity of litigation.'" In re PCH Assocs., 949 F.2d 585, 594 (2d Cir. 1991).

It therefore follows that to the extent that Trustee seeks an order disallowing both the Customer Claim and the General Unsecured Claim, the Defendants should be allowed to plead a counterclaim to allow those same claims and have all issues related to the allowance of the Defendants' claims adjudicated together at the same time and in one action. To grant the Trustee the relief that he seeks (dismissal of the Counterclaims) and to force the Defendants to raise objections to the disallowance outside the context of this adversary proceeding will result in multiplicity of lawsuits and a waste of judicial resources. The Trustee has commenced an adversary proceeding against the Defendants and the parties will move forward in discovery. To separate out only the issue of whether the Customer Claim and General Unsecured Claim will be allowed and have that matter decided separately is disingenuous to the purposes of Rule 13 of the Fed. R. Civ. P.

The Counterclaim was therefore properly asserted and withstands a challenge pursuant to Rule 12(b)(6).

**B.     The Counterclaims Do Not Violate the Claims Procedure Order**

In the Motion, the Trustee attempts to argue that the Counterclaims should be dismissed because Defendants "impermissibly seek to circumvent the claims adjudication process and the Claims Procedure Order." See Motion at 6. Contrary to the Trustee's assertions, Defendants have complied with the Claims Procedure Order and are only seeking to have the issues relating to the

HY/D728414v1/M054978/C0147910

allowance of their claims adjudicated at the same time as the Trustee's claim for disallowance.

The Claims Procedure Order provides that after a claimant has filed a customer claim with the Trustee:

> A. The Trustee shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor, . . .
>
> B. If the claimant desires to oppose the determination, the claimant shall be required to file with this Court, preferably electronically, and a hard copy with the Trustee a written statement setting forth in detail the basis for the opposition, together with copies of any documents in support of such opposition, within thirty (30) days of the date on which the Trustee mails his determination to the claimant. If the claimant fails to file an opposition as hereinabove required, the Trustee's determination shall be deemed approved by the Court and binding on the claimant.
>
> C. Following receipt by the Trustee of an opposition by a claimant, the Trustee shall obtain a date and time for a hearing before this Court on the controverted claim and shall notify the claimant in writing of the date, time, and place of such hearing.

See Claims Procedure Order at 6-7, Docket # 12, Adv. Pro. No. 08-1789 (the "Claims Procedure Order"). As set forth supra, AL Partners filed the Customer Claim prior to the bar date. Thereafter, and in direct contravention of the Claims Procedure Order, the Trustee commenced the instant adversary proceeding seeking, *inter alia*, disallowance of the Customer Claim though the Trustee had not rendered a determination on the Customer Claim in accordance with the Claims Procedure Order. In direct response to the Trustee stepping outside the parameters of the Claims Procedure Order and seeking disallowance of the Customer Claim in a manner not provided for in the Claims Procedure Order, Defendants filed the Answer with the Counterclaims seeking, *inter alia*, allowance of the Customer Claim. Moreover, it was not until a month after the Answer was filed that the Trustee issued the Determination of Claim denying the Customer Claim in its entirety. Despite the Trustee's

failure to adhere to the Claims Procedure Order in this adversary proceeding, after receiving the Determination of Claim, defendant AL Partners did file the Objection to Determination of Claim with this Court in accordance with the procedures set forth in the Claims Procedure Order. See Exhibit B to the Schlesinger Declaration, Docket # 3030, Adv. Pro. No. 08-1789.

The Trustee, who has not followed the Claims Procedure Order in this adversary proceeding, now seeks to hold Defendants to the procedures set forth therein and asks this Court to disregard Rule 13 of the Fed. R. of Civ. P. Worse, a decision on the disallowance of the Customer Claim in this adversary proceeding will have collateral estoppel and res judicata effect on any subsequent action or hearing concerning allowance of the Customer Claim pursuant to the Claims Procedure Order. The Trustee therefore seeks to have an order entered on his Complaint before the Defendants have an opportunity to have their Objection to the Determination of Claim heard by this Court. The Claims Procedure Order cannot trump Rule 13 of the Fed. R. Civ. P. and in fact does not and has not suspended the operation of the Fed. R. Civ. P. or the Fed. R. Bankr. P. in this adversary proceeding or in the BLMIS Liquidation Proceeding.

Furthermore, the Claims Procedure Order also provides that after the Trustee has received an objection by a claimant to the denial of his claim, the Trustee is mandated to "obtain a date and time for a hearing before this Court . . . ." See Claims Procedure Order at 6-7. No such hearing date was ever obtained. The effect of both the Trustee's claim for disallowance of the Customer Claim and the General Unsecured Claim and the Defendants' counterclaims for allowance of those same claims is that the issues relating to the claims will be adjudicated simultaneously. The parties are the same, the facts and legal issues will be the same and in an adversary proceeding where the Trustee is seeking alleged fraudulent transfers received by the Defendants it comports with judicial economy to have all issues relating to the claims and accounts of the Defendants with BLMIS adjudicated in the same

11

adversary proceeding.

In sum, the Trustee has stepped outside the Claims Procedure Order has waived that same order by asserting a claim for disallowance of the Customer Claim and the General Unsecured Claim in this adversary proceeding. Additionally, the Court, the Trustee and the Defendants have an interest in resolving all claims and issues in one proceeding. The Counterclaims are therefore properly asserted in accordance with Rule 13 of the Fed. R. Civ. P. and do not violate the Claims Procedure Order.

**C.** *Peskin v. Picard* **is Inapplicable to Defendants' Counterclaims**

In the Motion, the Trustee erroneously relies upon Peskin v. Picard, 413 B.R. 137 (Bankr. S.D.N.Y. 2009). While the concerns raised by the Trustee and the Court in Peskin were proper and appropriate a year ago and under those circumstances, the concerns raised by the Court therein with respect to the claims adjudication process and a "chaotic race to the courthouse" do not exist in the instant matter. Further the issues present in Peskin are inapplicable to the instant adversary proceeding.

In Peskin, plaintiffs who were certain investors of BLMIS commenced an adversary proceeding against the Trustee relating to issues of their claim allowance, the issues of net equity of the accounts and other claims for breach of fiduciary duty. See 413 B.R. at 140. Unlike the plaintiffs in Peskin, the Defendants did not circumvent the Claims Procedure Order and in fact only filed compulsory counterclaims *after* the Trustee filed the Complaint seeking to disallow the Customer Claim. It was the Trustee who brought the issues of allowance of the Defendants' claims before this Court in this adversary proceeding not the Defendants. The Trustee cannot circumvent the procedures when it benefits him and demand that the Claims Procedure Order be followed when it arguably hurts him.

Moreover, in dismissing the plaintiffs' claims in Peskin, this Court held that the Claims Procedure Order "provides a practical and efficient way to resolve a large number of claims without burdening the court or draining its resources. The Trustee can resolve most of the claims, leaving only those incapable of resolution for this Court." Id. at 143. Based upon the factual allegations contained in both the Complaint and the Answer, all of the issues concerning the alleged fraudulent transfers, BLMIS accounts and the claims and defenses raised by the parties to this litigation that the Customer Claim and the General Unsecured Claim have to be resolved by this Court and outside of the parameters of the Claims Procedure Order. It is therefore consistent with the Peskin decision to allow the Counterclaims to withstand the Rule 12(b)(6) challenge and have all of the issues concerning the claims of Defendants adjudicated in one adversary proceeding. Nowhere in the Peskin decision does this Court state that a compulsory counterclaim filed by a claimant in an adversary proceeding where the Trustee seeks an order disallowing that claimant's claim is improper and should be litigated separately. The claims are wholly intertwined, raise the exact issues and arise out of the same transaction and occurrence and must be decided by this Court. Indeed, the Peskin decision contemplated that some issues will naturally have to be resolved *outside* of the claims adjudication process. See Peskin, 413 B.R. at 143 (finding that through the claims adjudication process "[t]he Trustee can resolve *most* of the claims, leaving only those incapable of resolution for this Court.").

Lastly, in Peskin, this Court voiced its concern that "[i]f each customer decided to file a lawsuit instead of an objection to the Trustee Determination, the claims adjudication process would become cumbersome, ungainly and unmanageable and would lead to the expenditure of an unfathomable amount of judicial resources." Peskin, 413 B.R. at 145. The Trustee's concern that if the Counterclaims were permitted to stand, the "Trustee could be faced with having to

13

litigate against an avalanche of similarly disruptive counterclaims that would drain his resources and frustrate his ability to orderly administer the estate through the claims adjudication process," see Motion at 7, is baseless. The procedure by which the Trustee has sought to disallow the Defendants' claims is unique to a specific set of potential defendants (*i.e.* those whom the Trustee plans to sue for fraudulent transfers). There simply is no potential for an "avalanche" of counterclaims unless the Trustee continues to file adversary proceedings seeking an order disallowing customer claims. The Trustee has chosen this course of action, he should not be permitted to complain that counterclaims could potentially be filed by defendants.

Therefore, and contrary to the Trustee's assertions, allowing Defendants' Counterclaims to proceed in this action will streamline the claims adjudication process with respect to these Defendants and will conserve judicial resources by allowing all issues to be raised, litigated and decided in one adversary proceeding.

**D.     The Trustee's Reliance on the Automatic Stay is Misplaced**

The Trustee's final attempt to justify ignoring the Claims Procedure Order in asserting Counts Eight and Nine in the Complaint seeking to disallow the Defendants' Customer Claim and General Unsecured Claim is his misplaced reliance on the automatic stay provisions of the Bankruptcy Code.

In the Motion, the Trustee asserts that had the Defendants' claims been asserted outside of the Bankruptcy Court, relief from the stay would have been required to assert them. See Motion at 8. The application of the automatic stay is completely irrelevant to the instant adversary proceeding. No pre-petition claims were asserted against Madoff or BLMIS outside of the context of BLMIS Liquidation Proceeding. The Counterclaims were properly asserted pursuant to Rule 13 of the Fed. R. Civ. P. requesting an order allowing the claims the Trustee

seeks to disallow.

Moreover, the Trustee's concerns of an orderly bankruptcy administration are also irrelevant in this matter. This litigation involves claims that a plaintiff has against a defendant and the claims that the defendant has against a plaintiff. Each party's claims will be resolved in one litigation by the same judge at the same time. Dismissing the Counterclaims and forcing the Defendants to litigate those claims outside the context of this adversary proceeding will in fact prejudice the Defendants who are forced to defend against the Trustee's claims in this action, potentially receive an adverse judgment then be faced with collateral estoppel and res judicata issues in the BLMIS Liquidation Proceeding or in any other proceeding or hearing concerning their Counterclaims and/or Madoff's breaches of duty. Moreover, there will be a delay in resolving all of the issues related to Defendants' claims if the Counterclaims and Setoff defenses are bifurcated from the Trustee's fraudulent transfer and disallowance claims.

The Trustee's arguments concerning the applicability of the policies behind the automatic stay provisions of the Bankruptcy Code are therefore wholly irrelevant.

## POINT II

### THE SECOND COUNTERCLAIM AND THE SETOFF DEFENSES ARE PROPERLY PLEADED IN THE ANSWER

The second branch of the Trustee's Motion seeks to dismiss the Defendants' Second Counterclaim seeking allowance of the General Unsecured Claim and their Setoff Defenses. See Motion at 9. The Motion should be denied as both their Second Counterclaim and their Setoff Defenses are properly pleaded and withstand a Rule 12(b)(6) motion to dismiss.

As discussed supra, Defendants' Second Counterclaim seeks an order allowing Amy Luria's General Unsecured Claim against Madoff for his breach of fiduciary duty as he was both

15

trustee of the Amy Luria Trust and executor of the G. Luria Estate. It is undisputed that Madoff was a fiduciary of defendant Amy Luria. See Complaint at ¶ 14.

It is well-settled that "a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect." See Birnbaum v. Birnbaum, 73 N.Y.2d 461, 466, 541 N.Y.S.2d 746, 748 (1989). A trustee is under a duty to administer the trust solely in the interest of the beneficiary. See In re Heller, 6 N.Y.3d 649, 655, 816 N.Y.S.2d 403, 403 (2006); see also Mercury Bay Boating Club Inc. v. San Diego Yacht Club, 76 N.Y.2d 256, 270, 557 N.Y.S.2d 851, 859 (1990) ("[T]he trustee must administer the trust for the benefit of the beneficiaries and cannot compete with the beneficiaries for the benefits of the trust corpus."). His conduct is to be evaluated in light of the fact that trustees are "held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." See In re Estate of Wallens, 9 N.Y.3d 117, 123, 847 N.Y.S.2d 156, 156 (2007) (citing Meinhard v. Salmon, 249 N.Y. 458, 464 (1928)).

With respect to trustees who are entrusted with property to invest under a trust, those trustees are charged with the duty to keep those funds entrusted to him in a "state of security productive of income and subject to future recall." Newhoff v. Rankow, 107 Misc. 2d 589, 594, 435 N.Y.S.2d 632, 635 (Sur. Ct. Nassau County 1980). The performance of these fiduciaries is to be "tested against the standard of prudent men of discretion and intelligence who are seeking a reasonable income and the preservation of their capital." Berardi v. W. T. Lane, Inc., 39 A.D.2d 936, 937, 333 N.Y.S.2d 226, 229 (2d Dep't 1972).

In light of these standards and as set forth in the General Unsecured Claim as well as in the Answer, Madoff breached his fiduciary duties to Amy Luria as beneficiary of the Amy Luria Trust. Madoff is therefore accountable to defendant Amy Luria for his actions as trustee of the

Amy Luria Trust and is personally liable for the value of the assets of the Amy Luria Trust he caused to be decimated and lost. See In re Hubbell, 302 N.Y. 246, 255-56 (1951) (noting that when a fiduciary is under a duty profitably to employ funds in their hands, he does so under a penalty of personal liability for his neglect); see also In re Sheridan, 32 Misc. 2d 38, 41, 222 N.Y.S.2d 751, 754 (Sur. Ct. Nassau County 1961).

Amy Luria, therefore, properly stated a claim for breach of fiduciary duty against Madoff and the General Unsecured Claim seeks liability against Madoff for the full amount of the Amy Luria Trust that Madoff decimated and lost. Moreover, the Setoff Defenses reflect the same application of legal principles that Madoff should be personally liable to defendant Amy Luria not because he is the owner of BLMIS but because he was her *fiduciary*. See Answer at ¶¶ 140-142. Viewing all of the facts in a light most favorable to Defendants, Amy Luria has properly asserted a Second Counterclaim and Setoff Defenses seeking the allowance of her General Unsecured Claim against Madoff for a breach of his fiduciary duties in response to the Trustee's Count Nine seeking to disallow the same claim.

The Trustee purports to argue in the Motion that to allow an offset for Amy Luria's supposed "liability for the receipt of fraudulent transfers by the amount of her General Unsecured Claim against the estate would merely perpetuate the fraudulent transfers, and render meaningless the Bankruptcy Code's fraudulent transfer provisions because the fraudulently conveyed funds would not become available for *pro rata* distribution to all creditors." See Motion at 10-11. Essentially, the Trustee once again asks this Court to view all of his allegations in a light most favorable to him and to disregard all of the allegations of the Defendants concerning the breach of fiduciary duty by Madoff in order to strip Defendants of their defenses and claims.

Indeed, the cases relied upon by the Trustee to support his position that "there is no mutuality of obligations" in this action for a setoff, In re O.P.M. Leasing Services, Inc., 40 B.R. 380 (Bankr. S.D.N.Y. 1984), and Geron v. Schulman (In re Manshul Constr. Corp.), 97-CV-8851, 2000 U.S. Dist LEXIS 12576 (S.D.N.Y. Aug. 30, 2000), found that the defenses of setoff were inapplicable *after trial*. No trial has occurred in this matter and in fact the parties have not yet proceeded with discovery. The Trustee's request to have the Second Counterclaim and the Setoff Defenses dismissed on facial grounds where they have all sufficiently been pleaded and without allowing for any discovery is meritless, makes the Defendants impermissibly helpless in this adversary proceeding and is premature as the parties have not begun the discovery process in this case. The Second Counterclaim and Setoff Defenses survive a Rule 12(b)(6) motion to dismiss and the parties should be permitted to move forward with discovery on all of these issues.

Additionally, the Trustee's positions in the Motion fail to consider or even acknowledge that the Madoff Chapter 7 Case has been substantively consolidated into the BLMIS Liquidation Proceeding. See Consolidation Order, Docket # 252, Adv. Pro. No. 08-1789. As set forth by this Court in the Consolidation Order, "all assets and liabilities of the Madoff estate shall be deemed consolidated into the BLMIS SIPA Proceeding and the BLMIS estate, which shall be administered in accordance with SIPA and the Bankruptcy Code under the jurisdiction of this Court." Id. The Consolidation Order further provides that substantive consolidation of the two estates is appropriate "based upon the unity of interest between Madoff and BLMIS, the transfer and commingling of assets and the intertwined financial affairs generally between the two entities . . . ." Id. at ¶ L. Moreover, the Consolidation Order acknowledges that the Chapter 7 Trustee concluded that consolidating the Madoff Chapter 7 Case with the BLMIS Liquidation

18
HY/D728414v1/M054978/C0147910

Proceeding "is the most expeditious, efficient and economical manner to administer the estates and will benefit creditors of *both estates*." Id. at ¶ J (emphasis added).

In light of the Consolidation Order and the admitted entanglement of Madoff's personal affairs with BLMIS, the Second Counterclaim and the Setoff Defenses are properly asserted. The entanglement of Madoff as trustee and fiduciary of defendant Amy Luria cannot and should not be separately considered from the alleged fraudulent transfers Defendants are claimed to have received from Madoff as trustee of the Amy Luria Trust and as executor of the G. Luria Estate. The Trustee cannot ask this Court to view his claims in a vacuum and then force the Defendants to litigate their claims separately and faced with a risk of collateral estoppel or res judicata if they are not permitted to present their defenses and claims in the same litigation. All claims between the parties and Madoff should therefore be adjudicated together in this adversary proceeding. The Motion should therefore be denied.

## CONCLUSION

A review of both the Complaint and the Answer, even when viewing each parties' pleading in a light most favorable to them, highlights that all of the relevant acts, occurrences and issues with respect to Madoff, the Defendants, the Amy Luria Trust and the G. Luria Estate are intertwined and entangled. In accordance with Rule 13 of the Fed. R. Civ. P. as well as in the interests of justice, all of these issues should be tried to together and all of the claims should be adjudicated jointly. To grant the Trustee's requests in the Motion will result in impermissible bifurcation of claims between the parties, risk inconsistent judgments or the application of res judicata and will result in a delay in the resolution of all of the issues between these parties.

The Counterclaims and the Setoff Defenses are properly pleaded and stated in the Answer and withstand a challenge pursuant to Rule 12(b)(6). The Trustee's Motion must therefore be denied in its entirety.

Dated: Garden City, New York
       January 11, 2011

                              JASPAN SCHLESINGER LLP
                              *Attorneys for Amy J. Luria and*
                              *Amy Luria Partners LLC*

                      By:   /s/ Steven R. Schlesinger
                             STEVEN R. SCHLESINGER
                             HALE YAZICIOGLU
                             300 Garden City Plaza
                             Garden City, New York 11530
                             (516) 746-8000

To:    David J. Sheehan, Esq.
        Marc E. Hirschfield, Esq.
        Keith R. Murphy, Esq.
        Baker & Hostetler LLP
        *Attorneys for Irving H. Picard, Trustee*
        *for the Substantively Consolidated SIPA*
        *Liquidation of Bernard L. Madoff Investment*
        *Securities LLC and Bernard L. Madoff*
        45 Rockefeller Plaza
        New York, New York 10111
        (212) 589-4200