| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | |
| SECURITIES INVESTOR PROTECTION<br>CORPORATION,<br><br>        Plaintiff,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT<br>SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation<br>of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>AMY J. LURIA and AMY LURIA PARTNERS<br>LLC,<br><br>        Defendants. | Adv. Pro. No. 10-03222 (BRL) |

**TRUSTEE'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO
DISMISS DEFENDANTS' COUNTERCLAIMS AND STRIKE THE
<u>FOURTEENTH AND FIFTEENTH AFFIRMATIVE DEFENSES</u>**

Irving H. Picard, as Trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. 78aaa, *et seq*. ("SIPA"), and the estate of Bernard L. Madoff individually ("Madoff") (collectively, the "Debtors"), and plaintiff and counterclaim defendant in the above-referenced adversary proceeding (the "Adversary Proceeding"), by and through his undersigned counsel, respectfully submits this reply memorandum of law in further support of

his motion (the "Motion"), pursuant to Rule 12 of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7012, to dismiss the Counterclaims[1] and strike the Fourteenth and Fifteenth Affirmative Defenses asserted by defendants Amy J. Luria ("Luria") and Amy Luria Partners LLC ("AL Partners") (collectively, "Defendants").

## PRELIMINARY STATEMENT

The Trustee's motion seeks to dismiss Defendants' Counterclaims because they are mere reformulations of pre-petition claims that Defendants are already pursuing in the claims adjudication process pursuant to the Claims Procedure Order. In addition, the Trustee also moves to dismiss Defendants' Counterclaims and Affirmative Defenses which impermissibly seek to setoff Defendants' claims against the Debtors against the Trustee's fraudulent conveyance claims.

In their Opposition to the Motion (the "Opposition Brief" or "Opp. Br."), Defendants erroneously assert that their Counterclaims against the Debtors are compulsory claims under Rule 13(a) of the Federal Rules of Civil Procedure, which they say must be asserted and adjudicated in this Adversary Proceeding. *See* Opp. Br. at 8-9. To the contrary, because these are pre-petition claims under the clear and unambiguous language of Federal Rule of Bankruptcy Procedure 7013, they are not subject to the compulsory counterclaim rule. Bankruptcy Rule 7013 makes clear that in the context of a bankruptcy adversary proceeding, the compulsory counterclaim rule applies only to *post-petition* claims. As set forth below, the omission of pre-petition claims from the compulsory counterclaim rule promotes the expeditious and efficient administration of the estate by ensuring that pre-petition claims are handled in the claims

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Trustee's Motion to Dismiss Defendants' Counterclaims and Strike the Fourteenth and Fifteenth Affirmative Defenses.

adjudication process.  In addition, because Defendants' pre-petition claims are claims against the Debtors, and the Debtors are not parties to this Adversary Proceeding, the Counterclaims are not mandatory claims "against an opposing party" that fall within the express statutory language of Bankruptcy Rule 7013.

Defendants have pursued the allowance of their pre-petition claims in the claims adjudication process under the Claims Procedure Order.  They maintain, however, that they should also be permitted to seek allowance of their claims in this Adversary Proceeding through their Counterclaims, urging that, otherwise, they will be stripped of their defenses to the Trustee's avoidance action and "meritorious claims."  Opp. Br. at 9-12.  To the contrary, Defendants will have every opportunity to introduce any and all *facts* which are relevant to their defenses to the Trustee's claims.  It is the *relief* which Defendants seek in the Counterclaims – the allowance of their pre-petition claims in this Adversary Proceeding – that is the subject of the Trustee's objection, because the one and only appropriate forum for determination of pre-petition claims is the claims adjudication process, of which Defendants have already availed themselves.

## ARGUMENT

**I. THE COUNTERCLAIMS AND AFFIRMATIVE DEFENSES ARE NOT COMPULSORY PRE-PETITION CLAIMS THAT MUST BE ASSERTED IN THIS ADVERSARY PROCEEDING**

### A. The Counterclaims Are Not Compulsory

Defendants argue that their Counterclaims are compulsory counterclaims which must be asserted in this proceeding pursuant to Rule 13(a) of the Federal Rules of Civil Procedure.  *See* Opp. Br. at 8-9.  Defendants' reliance on Rule 13(a) is misplaced, however, because Bankruptcy Rule 7013 does not adopt 13(a) in its entirety, but instead, expressly carves out from compulsory

counterclaims a defendant's pre-petition claims against a debtor asserted in an adversary proceeding commenced by a trustee:

> Rule 13 F.R.Civ.P. applies in adversary proceedings, *except* that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, *unless the claim arose after the entry of an order for relief*.

Fed. R. Bankr. P. 7013 (emphasis added). This exception to the compulsory counterclaim rule in the context of a bankruptcy case aids "the expeditious and efficient administration of the estate" and is meant to allow a defendant who has filed a claim to participate in the claims process. *See* 10 COLLIER ON BANKRUPTCY ¶ 7013.03 (16th ed. 2010); *see also In re U.S. Physicians, Inc.*, 2000 WL 1140294 at *6 n.1 (Bankr. E.D. Pa. Aug. 9, 2000) ("the exception to asserting an otherwise compulsory counterclaim in a bankruptcy proceeding against a claimant which is set forth in F.R.B.P. 7013 is merely meant to allow a claimant-defendant who has filed a claim to participate in the claims process"); *Peachtree Lane Assocs., Ltd. v. Granader*, 175 B.R. 232, 237 n.7 (N.D. Ill. 1994) ("insofar as some of the counterclaims are plainly pre-petition they are not compulsory under Bankruptcy Rule 7013").

Moreover, it is horn-book law that in the context of an adversary proceeding brought against a party by a trustee, claims pertaining to the debtor's pre-petition conduct should not be considered as compulsory counterclaims, because those claims are not between the same parties, and therefore, Rule 7013 has no applicability:

> [I]f the defendant has a claim against the debtor, the compulsory counterclaim rules, 7013 and 13, should have no applicability. In effect, the two are not claims existing between the same parties and certainly would not be arising out of the same transaction or occurrence. The claim of the defendant is one against the debtor, while the claim of the trustee did not belong to the debtor but belonged exclusively to the trustee. The very parties to the action are different. Even if the claim and asserted counterclaim arose out of the same transaction or occurrence, which is possible, the

> parties would be different and the defendant's claim should not be considered a counterclaim.

10 COLLIER ON BANKRUPTCY ¶ 7013.03 (16th ed. 2010). Thus, because the Counterclaims arise out of pre-petition conduct involving Defendants' BLMIS accounts and Madoff's fraud, as a matter of law, they are not compulsory counterclaims to the Trustee's avoidance action.[2] The clear effect of filing such non-compulsory counterclaims that seek damages from the estate is that the claims adjudication process is triggered – the very process that the Claims Procedure Order was entered to regulate and orderly administer, and which Defendants seek to circumvent.

    B.    **The Second Counterclaim and Affirmative Defenses Must be Dismissed Against the Trustee Because There is No Mutuality of Obligations and Therefore No Right of Setoff**

Defendants argue at length that the Second Counterclaim and the Fourteenth and Fifteenth Affirmative Defenses, which seek to setoff Defendants' pre-petition claims against the Trustee's avoidance action, should not be dismissed because they have properly pled the elements of their breach of fiduciary duty claim against Madoff. *See* Opp. Br. at 15-19. Regardless of whether Defendants' breach of fiduciary duty claim is properly pled, the fact remains that a party is unable as a matter of law to assert a setoff where that party is being sued by a trustee for fraudulent transfers. *See generally In re O.P.M. Leasing Services, Inc.*, 40 B.R. 380, 402 (Bankr. S.D.N.Y.), *aff'd*, 44 B.R. 1023 (S.D.N.Y. 1984). Indeed,

> [w]here as here, a defendant with a pre-petition claim against the debtor seeks to set that claim off against liability to the Trustee as a transferee of a fraudulent conveyance, mutuality is lacking because liability of such a defendant to the Trustee as a transferee of a

---

[2] *See also Zinke v. United States Dep't of the Treasury (In re Zinke)*, 1991 WL 107815, at *4 (E.D.N.Y. May 31, 1991) ("the only counterclaims which must be asserted by a defendant in a proceeding commenced by the debtor are those arising postpetition"); *In re International Endoscope Mfrs., Inc.*, 79 B.R. 620, 622 (Bankr. E.D. Pa. 1987) (Rule 13(a) does not apply to counterclaims that could be asserted as prepetition claims). Indeed, the very case relied on by Defendants, *Liona Corp., Inc. v. PCH Assocs.* (*In re PCH Assocs.*), 949 F.2d 585, 594 (2d Cir. 1991), reaches this same conclusion. *Id.* at 594 ("Rule 7013 carves out an exception to the compulsory counterclaim rule for claims against the estate that arose prior to 'an order for relief.'").

> fraudulent conveyance does not constitute a pre-petition debt owed to the debtor; rather it is a debt owed to the Trustee.

*Kramer v. Sooklall (In re Singh),* 434 B.R. 298, 308 (Bankr. E.D.N.Y. 2010) [citation omitted].

Thus, notwithstanding Defendants' suggestion to the contrary, the right of setoff of Defendants' pre-petition claims simply does not exist in this Adversary Proceeding, whether asserted as a counterclaim or in the guise of an affirmative defense. *See, e.g.*, *N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc. (In re N. Am. Energy Conservation, Inc.)*, 2000 WL 1514614, at *2 (S.D.N.Y. Oct. 12, 2000) (holding that setoff is a claim against the bankruptcy estate even if it is labeled as an affirmative defense).

In addition, contrary to Defendants' argument that the Trustee's motion to dismiss is premature because discovery has not been conducted (Opp. Br. at 18), dismissal of the setoff Counterclaims and Affirmative Defenses is entirely appropriate at the pleadings stage. *See Moglia v. Johnson Outdoors, Inc. (In re Outboard Marine Corp.)*, 2003 WL 21018598 at *1 (Bankr. N.D. Ill. Apr. 24, 2003) [citations omitted] (dismissing counterclaim seeking setoff of pre-petition claim against Trustee's fraudulent conveyance claims at pleadings stage, noting that "[t]he issue is not whether [counterclaim-plaintiff] will ultimately prevail, but whether it has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claims. The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the counterclaim, not to decide the merits of the case"); *Stoner v. Walsh*, 772 F. Supp. 790, 800 (S.D.N.Y. 1991) ("The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists") [citation omitted]; *Greene v. Emersons, Ltd.*, 86 F.R.D. 66, 73 (S.D.N.Y. 1980) ("defendant has the right ... to challenge the legal sufficiency of the complaint's allegations against him, without first subjecting himself to discovery procedures"); *see also Speed Auto Sales, Inc. v. American Motors Corp.*, 477 F. Supp. 1193,

1195-96 (E.D.N.Y. 1979) (issue on Rule 12(b)(6) motion is whether plaintiff states a claim and is therefore entitled to proceed with discovery).

II. **CONTRARY TO DEFENDANTS' ARGUMENT, THE ASSERTION OF COUNTERCLAIMS VIOLATES THE CLAIMS PROCEDURE ORDER AND WILL UNDERMINE THE EFFICIENT ADMINISTRATION OF THE ESTATE**

    A. **The Considerations of Judicial Economy and Orderly Administration of the Estate as Enunciated in *Peskin v. Picard* Dictate that Defendants' Pre-Petition Claims Be Heard Only in the Claims Adjudication Process**

Notwithstanding Defendants' assertions that *Peskin v. Picard*, 413 B.R. 137 (S.D.N.Y. 2009) is inapplicable to this adversary proceeding (Opp. Br. at 12-14), the same considerations of judicial economy and orderly administration of the estate which led to the Court's decision to dismiss the plaintiffs' claims in *Peskin* are just as applicable and warrant the same result here with respect to Defendants' Counterclaims.

As discussed in the Trustee's Motion, this Court in *Peskin v. Picard*, 413 B.R. 137 (Bankr. S.D.N.Y. 2009), previously dismissed a complaint wherein the plaintiffs sought affirmative relief in connection with customer claims that they had already filed with the Trustee. The Court in *Peskin* found that the Claims Procedure Order clearly applied to the relief sought by the plaintiffs' complaint, as it related to the Trustee's determination of the plaintiffs' customer claims, and that the Court had a duty to enforce its orders and ensure that the plaintiffs adhered to the claims determination process that is already in place. *Id.* at 144. The Court further found that the plaintiffs there would not be prejudiced by comporting with the Claims Procedure Order because the affirmative relief sought in the complaint is exactly the relief available to them under the order. *Id.* Finally, the Court found that the *Peskin* plaintiffs' failure to comply with the Claims Procedure was "fundamentally unfair to other customers and permitting such a course of action would lead to an unwieldy process of adjudicating claims:"

7

> If each customer decided to file a lawsuit instead of an objection to the Trustee Determination, the claims adjudication process would become cumbersome, ungainly and unmanageable and would lead to the expenditure of an unfathomable amount of judicial resources. The Trustee would be forced to divert substantial resources to the task of defending against this and other similar cases in court, while simultaneously litigating with customers and creditors within the confines of the Claims Procedure Order.

*Id.* at 145.

The District Court affirmed this Court's decision dismissing the *Peskin* complaint. *See Peskin v. Picard*, 440 B.R. 579 (S.D.N.Y. 2010). The District Court agreed that overarching considerations of judicial economy and orderly administration of the bankruptcy estate would not be served by permitting claimants to pursue the allowance of their pre-petition claims outside of the claims adjudication process: [3]

> As the bankruptcy court noted, there is no reason that the appellants should not be required to adhere to the same claims adjudication process as all other customers. Their basic contention – that the trustee has adopted an improper definition of "net equity" – is common to most, if not all, BLMIS customers. Furthermore, that issue has now been decided (in a manner adverse to the appellants) by the bankruptcy court, and is now pending on appeal to the Second Circuit Court of Appeals. In light of this procedural posture, allowing the appellants to attack the trustee's actions in an adversary proceeding would be a misuse of the trustee's – and the bankruptcy court's – time and resources. For the same reasons, it was not an abuse of discretion for the bankruptcy court to dismiss the appellants' claims for declaratory relief based on the trustee's alleged delay in making payments on claims. That delay was based on the need to calculate net equity positions and to have that issue litigated in an orderly process in the bankruptcy court.

*Id.* at 585.

---

[3] As set forth in the Trustee's Motion, the automatic stay was also designed to prevent interference with an orderly bankruptcy administration that could be caused by the assertion of pre-petition claims. Motion at 7-8. Defendants claim that that the automatic stay is not relevant to the instant adversary proceeding, claiming that no claims were asserted outside of the BLMIS liquidation proceeding. However, as noted in the Trustee's Motion, some courts have held that where such pre-petition claims are asserted against a debtor in the Bankruptcy Court, the automatic

It is clear that the very same concerns of judicial economy and orderly administration of the estate that led the Court to dismiss the *Peskin* complaint are just as applicable to the Counterclaims asserted by Defendants here. The Claims Procedure Order clearly applies to the Counterclaims, which seek affirmative relief in the form of the allowance of Plaintiff's pre-petition claims. *See* Answer at ¶¶ 158, 162. For the same reasons set forth by the Court in *Peskin*, Defendants here should also be required to adhere to the claims determination process already in place. *Peskin*, 413 B.R. at 144.

Similarly, the same concerns with regard to "wreaking havoc" on the claims adjudication process noted by the Court in *Peskin* are present with regard to the Counterclaims asserted here. If every defendant that was the subject of an adversary proceeding commenced by the Trustee decided to assert counterclaims instead of following the claims procedures with regard to their pre-petition claims, the Trustee could find himself forced to divert substantial resources to defending against those counterclaims while continuing to simultaneously litigate within the confines of the Claims Procedure Order.

Even if there may be, as Defendants contend, some minimal factual overlap between the Trustee's claims and Defendants' pre-petition claims, judicial economy considerations *for the estate as a whole* would not be served by resolving the Trustee's claims and Defendants' pre-petition claims in this adversary proceeding.[4] Otherwise, as discussed above and in *Peskin*, if

---

stay is invoked to protect the bankruptcy process. *See* Motion at 8 (citing *In re Ionosphere Clubs, Inc.*, 114 B.R. 378, 398 (S.D.N.Y.), *aff'd in part, rev'd in part*, 922 F.2d 984 (2d Cir. 1990).
[4] There is no risk, as Defendants suggest, that they will be precluded from asserting their defenses to the claims determination in the claims adjudication process because the Counterclaims are not compulsory claims within the plain meaning of Bankruptcy Rule 7013. *See Mason Tenders District Council Pension Fund v. Messera*, 1996 WL 351250 at *10 (S.D.N.Y. June 26, 1996) quoting 18 Charles A. Wright, et al., Federal Practice and Procedure: Jurisdiction § 4414, at 109 (1981) ("[f]ailure to advance a merely permissive counterclaim … ordinarily does not preclude a later action"); *National Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656 (S.D.N.Y. 1991) citing *Winters v. Lavine*, 574 F.2d 46 (2d Cir. 1978) ("[c]entral to the application of *res judicata* to bar a previously unlitigated claim is the requirement that the previously unlitigated claim could and should have been raised and litigated in the earlier action").

every defendant that was the subject of an adversary proceeding were to assert their pre-petition claims against the estate as counterclaims, the Trustee would be forced simultaneously to litigate counterclaims in the adversary proceedings and claims within the confines of the Claims Procedure Order. *See Peskin*, 413 B.R. at 145.

In addition, as in *Peskin*, Defendants here will not be prejudiced by complying with the Claims Procedure Order. Despite Defendants' bald assertion of prejudice, this is not a case in which counterclaims must be asserted so that important rights of Defendants will not be lost. Defendants will be able to continue to advance their pre-petition claims against the Debtors in the claims adjudication process under the Claims Procedure Order, and they can "argue the same points, allege the same facts, and obtain the same result by following these procedures."[5] *Peskin*, 413 B.R. at 144. Nor does the Trustee's Motion seek to prevent Defendants from asserting any and all *facts* which may be relevant to defenses to the Trustee's counterclaims.[6] The Trustee's contention on this Motion is that this Adversary Proceeding is simply not the proper forum for the *relief* sought in the Counterclaims – namely, the allowance of their pre-petition claims against the estate.

Accordingly, for all of the foregoing reasons set forth by the Court in *Peskin*, Defendants here should not be permitted to preempt the Claims Procedure Order merely because they seek allowance of their claims in the guise of the Counterclaims. Try as they might, Defendants

---

[5] Indeed, Defendants have followed the mandates of the Claims Procedure Order: AL Partners filed its pre-petition customer claim, the Trustee determined that claim, and AL Partners filed its objection to that determination. In their Opposition Brief, Defendants complain, however, the Trustee has not followed proper procedures because he has yet to set a hearing date on AL Partners' objection. Opp. Br. at p. 11. The Trustee has not set a date on AL Partners' objection – or any other objections – because the Net Equity Decision is currently on appeal at the Second Circuit Court of Appeals and that decision remains a central question in this case as it will affect all customer claims in the SIPA liquidation. It would therefore be futile – and wasteful – to litigate those issues here and potentially in every other adversary proceeding until such time as the Net Equity issue has been finally decided.

[6] Although the Trustee disputes the accuracy of many of Defendants' factual allegations set forth in their Opposition Brief, he does contend that certain factual and evidentiary issues may be relevant to Defendants' defenses to the Trustee's avoidance claims. *See* Opp. Br. at 4.

cannot successfully distinguish their Counterclaims from the claims dismissed in the *Peskin* case because, in essence, both cases involve parties who seek, through adversary proceedings, resolution of their pre-petition claims against the estate that are properly governed by the Claims Procedure Order. *See Peskin*, 413 B.R. at 144 (dismissing adversary proceeding brought by customers of BLMIS who sought declaratory judgment and compensatory damages in connection with customer claims that they had already filed with the Trustee, noting that "the Claims Procedure Order clearly applies to Count I of the Complaint because Count I relates to the Trustee's determination of Plaintiffs' customer claims").

A further reason that Defendants' pre-petition claims must remain in the claims adjudication process is to permit the Trustee to exercise his sound business judgment with regard to control over the claims process. In particular, at the present time, the Trustee does not possess sufficient funds in the estate from which to make distributions to general creditors. It would therefore be futile and a waste of time and resources to litigate at this time Defendants' pre-petition claim arising from Madoff's alleged breach of fiduciary duty to Defendants.

### B. The Trustee's Pursuit of Recovery of the Avoidable Transfers Against Defendants Before Adjudicating Defendants' Pre-Petition Claims Comports With Section 502(d) of the Code

Defendants suggest that because the Trustee has two counts in the complaint that seek to disallow their pre-petition claims pursuant to section 502(d) of the Bankruptcy Code, Defendants should be permitted to plead a counterclaim thereto seeking the allowance of their claims in this Adversary Proceeding. Opp. Br. at 9. Defendants' argument is based upon a misunderstanding of the operation of section 502(d), which as set forth below, does not in any way implicate or require the litigation of the merits of Defendants' claims at this time.

In Counts Eight and Nine of the Complaint, the Trustee seeks an order pursuant to section 502(d) of the Code disallowing Defendants' claims "unless and until" Defendants return the avoidable transfers to the Trustee. Compl. at ¶¶ 117-24. Section 502(d) provides for the disallowance of claims of creditors who received transfers which are avoidable, unless the creditor relinquishes the transfer. *See Picard v. Chais (In re Bernard L. Madoff Inv. Securities LLC)*, 2010 WL 5841402, *22 (Bankr. S.D.N.Y. Feb. 24, 2011) ("The purpose of [Section 502(d)] is to 'preclude entities that have received voidable transfers from sharing in the distribution of assets unless and until the voidable transfer has been returned to the estate'") (quoting *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 609 (Bankr. S.D.N.Y. 1986)). "The point of section 502(d) is that the claim is disallowed if the holder of that claim is subject to action by the trustee for the avoidability of a transfer . . . . Rather than addressing itself solely to claims, the focus of section 502(d) is upon creditors who received voidable transfers." 4 COLLIER ON BANKRUPTCY, ¶ 502.05[3] at 502-58 (16th ed. 2010).

Thus, disallowance of Defendants' pre-petition claims is *automatic* under section 502(d), because Defendants are the subject of a fraudulent conveyance action brought by the Trustee and thus the *merits* of their claims are entirely irrelevant to disallowance sought under that provision of the Code. Accordingly, the Counterclaims are simply not proper compulsory counterclaims whatsoever with regard to the Trustee's section 502(d) counts, and they should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant the Motion to Dismiss Defendants' Counterclaims and Strike the Fourteenth and Fifteenth Affirmative Defenses and grant such other and further relief as the Court deems proper.

Dated: New York, New York  
      March 15, 2011

Respectfully submitted,

*/s/ Keith R. Murphy*  
David J. Sheehan  
Email: dsheehan@baker.aw.com  
Marc E. Hirschfield  
Email: mhirschfield@bakerlaw.com  

Of Counsel:

Keith R. Murphy  
Email: kmurphy@bakerlaw.com  

Jonathan New  
Email: jnew@bakerlaw.com  
Andrew W. Reich  
Email: areich@bakerlaw.com  
**BAKER & HOSTETLER LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  

**BAKER & HOSTETLER LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  

*Attorneys for Irving H. Picard, Esq., Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*